[Civ. No. 3123. Third Appellate District.—April 4, 1927.]

## IDA B. GAMBLE, Respondent, v. RICHARD FIERMAN et al., Appellants.

[1] DEEDS—BUILDING RESTRICTIONS—PRIVITY—EQUITABLE EASEMENT.— In this action to enjoin defendants from violating a building restriction in a residence district, where plaintiff and defendants were the owners, respectively, of adjoining lots, each deraigning title by a separate chain of title from a common grantor, there was no privity either of contract or estate, as between them, and the right claimed by plaintiff was in the nature of an equitable easement.

[2] ID.—EQUITABLE EASEMENT—COMMON GRANTOR—CONSTRUCTION OF DEED.—In such an action, the basis of plaintiff's equitable easement as against the defendants must be found in the deed from the common grantor to the defendants' grantor, and the language of such deed must be construed in the light of the surrounding circumstances existing at the time of the making of the deed.

[3] ID.—MUTUAL INTENT—POTENCY OF DEED.—In this action to enjoin defendants from violating a building restriction in a residence district, the language used in the deed from the common grantor to defendants' immediate grantor, construed in the light of the existing and surrounding circumstances, was sufficiently potent for the expression of a mutual and reciprocal intent to bind defendants' property by an equitable easement in favor of plaintiff.

[4] ID.—ABSENCE OF RESTRICTIONS IN IMMEDIATE DEED—CONSTRUCTIVE NOTICE.—Where the deed to defendants' immediate grantor contained all the restrictions in question, and such deed was duly recorded at the time in the office of the county recorder, and about fifteen hundred other lots in the tract were sold by the common grantor containing such restrictions, and the residences upon the property so sold conformed to these restrictions, defendants were affected with constructive notice of, and took title subject to, plaintiff's equities, as they appeared from the terms of the common grantor's deed, construed in the light of the surrounding circumstances, even though the restrictions were not contained in the deed by which defendants took title.

[5] ID. — VIOLATION OF RESTRICTIONS — INJUNCTION.—In such action, where defendants, in violation of the restrictions of which they had notice and against the protests of plaintiff, were constructing a portion of their residence within twenty feet of the front line of their lot, plaintiff was entitled to injunctive relief.

---

(1) 18 C. J., p. 394, n. 18.   (2) 18 C. J., p. 386, n. 16.   (3) 18 C. J., p. 387, n. 18.   (4) 18 C. J., p. 395, n. 21.   (5) 32 C. J., p. 214, n. 70.

APPEAL from a judgment of the Superior Court of Los Angeles County.   E. P. Shortall, Judge Presiding.   Affirmed.

The facts are stated in the opinion of the court.

Smith & Lucas for Appellants.

Clement L. Shinn for Respondent.

BUCK, J., *pro tem.*—This is an appeal by defendants from a judgment enjoining defendants from violating a building restriction in a residence district. [1] Plaintiff

---

4.   See 9 Cal. Jur. 361, 374.

5.   Right of enforcement of restriction by purchaser under general plan against another purchaser, notes, 14 Ann. Cas. 1021; Ann. Cas. 1913E, 822.   See, also, 5 Cal. Jur. 380; 7 R. C. L. 1114.

and defendants are the owners, respectively, of adjoining lots, each deraigning title by a separate chain of title from a common grantor. Consequently, as between plaintiff and defendants, there is no privity either of contract or estate, and the right claimed by plaintiff is in the nature of an equitable easement as defined and exemplified in the cases of *Werner* v. *Graham,* 181 Cal. 174 [183 Pac. 945], *McBride* v. *Freeman,* 191 Cal. 152 [215 Pac. 678], *Martin* v. *Holm,* 197 Cal. 733 [242 Pac. 718], and *Alderson* v. *Cutting,* 163 Cal. 504 [Ann. Cas. 1914A, 1, 126 Pac. 157].

[2] Under the foregoing authorities the basis of plaintiff's equitable easement as against the defendants must be found in the deed from the common grantor to the defendants' grantor. Furthermore, the language of this deed must be construed in the light of the surrounding circumstances existing at the time of the making of the deed. In other words, from this deed, and this deed alone, as so construed, must appear the intent of the parties to create mutual or reciprocal rights of restriction between the grantees of the original grantor. In the case at bar, at the time of the deed to defendants' grantor in January, 1923, the Averill-Weymouth Company, Inc., was the owner of a tract of land known as Vista Del Oro. This tract had been subdivided into residence lots and blocks, and the map thereof recorded in the office of the county recorder of the county. In each deed the lot sold was referred to as lot in "Vista Del Oro, as per map recorded in Book 37, page 96 of Maps, in the office of the County Recorder of said County." Following the foregoing form of description each deed, including the deed to defendants' grantor, and the later deed to plaintiff, contained the following stipulations:

"*Said land* shall be used for residence purposes only, and any residence thereon shall cost and be fairly worth not less than $2,500, and every part and appurtenance thereof, except eaves and steps, shall be at least twenty (20) feet from the front line, and, *in case* of corner lots, at least 20 feet from the side lot line on the side adjacent to a street, except *if* said land is located in *that part* of *Block 4, 5, or 6,* facing Meyler street, it may be used for business purposes and any building *thereon* shall cost and be fairly worth not less than One Thousand ($1,000.00) Dollars, and any building thereon and every part and appurtenance thereof shall

in case of corner lots be at least 20 feet from a side lot line adjacent to a street, and the foregoing restrictions shall terminate on January 1st, 1940. Said land shall never be rented to any person of African or Oriental descent, and no intoxicating liquors shall be manufactured or sold thereon. The restrictions and conditions contained in this deed shall be covenants *running with the land* and shall operate for the *benefit of* and may be enforced by the *Seller or the owner of any lot in said Tract 'Vista Del Oro.'* "

As already noted, the first question to be considered is whether or not the foregoing language in the deed to defendants' grantor, construed in the light of the surrounding circumstances, contains expressions from which may be inferred any intent on the part of the parties thereto to create the equitable easement sought to be invoked in this action.

In the Werner and McBride cases cited above and in the case of *Berryman* v. *Hotel Savoy,* 160 Cal. 559 [37 L. R. A. (N. S.) 5, 117 Pac. 677], and in *Bressee* v. *Dunn,* 178 Cal. 96 [172 Pac. 387], the deed relied upon contained no language, express or implied, referring to any general plan or scheme of building improvement, and contained no language showing that it was the intent of the parties to the deed that the restrictions in the deed should be for the benefit of the subsequent owners or holders of all the lots in a defined or designated tract of land subdivided into residence lots.

For instance, it will be noted in the Werner case— strongly affirmed and upheld in the McBride case as fully stating the rule and its proper application—that the deed relied upon contains no language showing that the lot conveyed is a part of a residence tract or subdivision of land of which the grantor is the seller, nor is there any language in the deed from which it can be inferred that the owners or holders of the balance of the tract shall be the beneficiaries of the restrictions imposed upon the covenantor by the deed in question. See pages 177 and 178 of the Werner case.

Also, in the McBride case, though the complaint alleges that "in accordance with a general plan or scheme for the improvement of said tract, the owner inserted in each and every deed conveying such lots" certain restrictions, and

further alleges that these restrictions ''were imposed and said general plan or scheme adopted for the general benefit of all lots in said tract,'' it fails to appear that the pleader has, as in the case at bar, set out the language of the deed from which, by proper construction, any such intent as alleged can be inferred, or that the intent, even as alleged, was the intent of both parties to the deed.

Likewise, in the case of *Bressee* v. *Dunn,* as appears from page 99 of the opinion, the deed fails to contain any language from which, in the light of attending circumstances, the requisite intent can be inferred.

See, also, the Berryman case at page 562 of the opinion.

But the Berryman case does lay down the rule of construction later adopted in the McBride case, at page 156, as follows: ''The intention of the parties should be 'determined by a fair interpretation of the grant or reservation creating the easement (citing cases). It seems to us that in all these cases it is better to get at the intention of the grantor from the language of the deed, interpreted in the light of the attending circumstances, than to conjecture the intent from the circumstances, and then to make the language of the deed bend to that.' ''

The court in the McBride case then continues as follows: ''*Alderson* v. *Cutting,* 163 Cal. 503 [Ann. Cas. 1914A, 1, 126 Pac. 157], involved a case of uniform building restrictions wherein 'each of said deeds declared that the conditions stated should, as *to each owner of any other lot in the tract,* his heirs, successors or assigns, operate as covenants *running with the land for the benefit of said other lots or other owners.*' These restrictions were held to create an equitable easement so as to be enforceable by one grantee as against another.'' In other words, the court fully recognized the rule that by the light of surrounding circumstances we may explain what was doubtful, but may not contradict what is plain, or supply what is absent. In the McBride case the court emphasized by its own italics the language in the Alderson case as above italicized.

Also, in the case of *Currie* v. *Title Ins. & Trust Co.,* 60 Cal. App. 192, at page 196 [212 Pac. 409, 411], the court emphasizes the distinction made in *Werner* v. *Graham* between the language in the Alderson case and in the Werner case, in the following language, where it was clearly indi-

cated that, in the opinion of the court, the language in the Alderson case was sufficient to express the mutual intent of the parties to create the equitable servitude relied upon, the following being the language used in the opinion:

"These matters may all have been in the mind of the grantor and yet be of no avail to impose a servitude on the lots conveyed unless the grantee also joined in the plan and gave his consent to the interchange of servitudes involved. This very point is the one which was controlling in the determination of *Werner* v. *Graham.* What was said there was not *obiter dicta.* The supreme court stamped it as 'the crux of the present case.' In distinguishing *Alderson* v. *Cutting,* 163 Cal. 504 (Ann. Cas. 1914A, 1, 126 Pac. 157), from the one then under consideration, it said, 'The difference between such a case and the one at bar is that here there is no language in the instruments between the parties, that is, the deeds, which refers to a common plan of restrictions or which expresses or in any way indicates any agreement between grantor and grantee that the lot conveyed is taken subject to any such plan.'"

[3] Therefore, comparing the language of the deed in the case at bar with the language of the deed in the Alderson case, it would seem that the deed in the case at bar, by virtue of its reference to the map of the subdivided tract, would and did permit it to be shown by extrinsic evidence that the lot of the defendants was part and parcel of a piece of property so subdivided as to be used for a common building purpose. And, furthermore, it will be noted that the deed contained language referring not only to the land conveyed, but also went on to provide as follows: "And, in case of corner lots, at least 20 feet from the side lot line on the side adjacent to a street, except if said land is located in that part of Block 4, 5, or 6, facing Meyler Street," etc. The foregoing language would enable the court to avail itself of extrinsic evidence to show that there was a general scheme of building improvement in the tract. Also, the following language would indicate that the covenant was not a mere personal covenant so far as the grantor, as grantor, was concerned, for the grantor is referred to by the broader term of "seller" with reference to the tract as a whole, by fair construction. And also the following language would indicate that the covenant is imposed not simply

for the personal benefit of the grantor, but for the benefit of the balance of the property in the tract, the language in question being as follows: ''The restrictions and conditions contained in this deed shall be covenants *running with the land,* and shall operate *for the benefit of,* and may be enforced by the seller or the owner of *any* lot in said tract 'Vista Del Oro.' ''

Therefore, treating the construction placed by the courts upon the Alderson case as a definitely approved rule of property in this state, it would appear that the language in the case at bar, construed in the light of the existing and surrounding circumstances, is just as potent for the expression of a mutual and reciprocal intent to bind defendants' property by an equitable easement as was the language in the Alderson case.

[4] Defendants contend that the evidence is insufficient to sustain the finding that defendants took with notice of plaintiff's equity for the reason that the deed by which defendants took title from their immediate grantor did not contain any of the restrictions in question. But it does appear that the original deed containing all these restrictions and provisions, by which defendants' grantor took from the common grantor of plaintiff and defendants, was duly recorded at the time in the office of the county recorder, and it also appears, as already noted, that about fifteen hundred other lots were sold by the common grantor containing the restrictions in question, and that the residences erected upon the property so sold conformed to the restrictions set forth in the deeds.

The defendants were therefore affected with constructive notice of plaintiff's equities as they appeared from the terms of the common grantor's deed, construed, as aforesaid, in the light of the surrounding circumstances and the law as applied in the case of *Alderson* v. *Cutting, supra.*

Since defendants took with notice of plaintiff's equitable easement, they took subject thereto. (*Miles* v. *Clark,* 44 Cal. App. 539, 548 [187 Pac. 167]; Pomeroy's Equity Jurisprudence, 4th ed., sec. 1704, and cases cited; *Quatman* v. *McCray,* 128 Cal. 285 [60 Pac. 855]; *Allen* v. *Massachusetts Bonding & Ins. Co.,* 248 Mass. 378 [33 A. L. R. 669, 143 N. E. 499]; *Johnson* v. *Mt. Baker Presbyterian Church,* 113 Wash. 458 [194 Pac. 536].)

**[5]** It further appeared from the evidence and findings that the defendants, in violation of the restrictions of which they had notice and against the protests of the plaintiff, were constructing a portion of their residence within twenty feet of the front line of their lot. The plaintiff was therefore entitled to injunctive relief. (Pomeroy's Equity Jurisprudence, 4th ed., secs. 1693, 1705; *Taft* v. *Washington*, 29 Cal. App. 197 [154 Pac. 1073]; *Attorney-General* v. *Algonquin Club*, 153 Mass. 447 [11 L. R. A. 500, 27 N. E. 2].)

Judgment is therefore affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 2, 1927.